

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SQUARE D COMPANY and SCHNEIDER ELECTRIC, S.A., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 07 C 6294 ) |
| ELECTRONIC SOLUTIONS, INC. and WILLIAM AMBROS, | ) Judge James B. Moran ) ) |
| Defendants. | ) |

### ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS ELECTRONIC SOLUTIONS, INC. AND WILLIAM AMBROS TO PLAINTIFFS' VERIFIED COMPLAINT

Defendants Electronic Solutions, Inc. and ESI of Central Florida, Inc. (incorrectly sued as Electronic Solutions, Inc.) (hereinafter collectively "ESI") and William Ambros ("Ambros"), by their attorneys, and for their Answer to Plaintiffs' Verified Complaint, state as follows:

### THE PARTIES

1. Square D Company is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business in Palatine, Illinois. Square D is a leading manufacturer and supplier of electrical distribution products for both commercial and consumer applications.

**ANSWER:** Defendants are without knowledge as to the allegations set forth in paragraph 1, therefore, all allegations set forth therein are denied.

2. Schneider Electric is a corporation organized and existing under the laws of France, and authorized to do business in Illinois.

**ANSWER:** Defendants are without knowledge as to the allegations set forth in paragraph 2, therefore, all allegations set forth therein are denied.

3. ESI is a corporation organized and existing under the laws of Florida and having its principal place of business in Plant City, Florida. ESI also has an office in Saint Charles, Illinois and does regular and continuous business in Illinois. ESI sells electrical components, including electrical contactors. ESI is not an authorized Square D or Schneider Electric distributor.

**ANSWER:** Defendants admit that ESI is a corporation organized and existing under the laws of Florida and having its principal place of business in Plant City, Florida. Defendants admit that ESI sells electrical components but deny all remaining allegations of paragraph 3.

4. Ambros is an individual living in Plant City, Florida. Ambros is in the business of selling, inter alia, electrical components, including contactors. Ambros is not an authorized Square D distributor or an authorized Schneider Electric distributor.

**ANSWER:** Defendants admit that Ambros is an individual living in Plant City, Florida. Defendants further admit that Ambros is in the business of selling electrical components but deny all remaining allegations of paragraph 4.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 in that Plaintiffs assert causes of action arising under 15 U.S.C. §§ 1114(1) and 1125(a)(1) (Lanham Act).

**ANSWER:** Paragraph 5 states a legal conclusion that requires neither the admission nor denial of Defendants. Defendants deny all remaining allegations of paragraph 5.

6. This Court has personal jurisdiction over ESI and Ambros because they are doing business in Illinois, operate an office in Illinois and offer electrical components for sale in Illinois. In addition, ESI and Ambros offer products for sale in Illinois via the internet.

2

**ANSWER:** Paragraph 6 states a legal conclusion that requires neither the admission nor denial of Defendants. Defendants deny all remaining allegations of paragraph 6.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a) and (b) and because ESI and Ambros are doing business in this District, operate an office in this District and offer electrical components for sale in this District.

**ANSWER:** Paragraph 7 states a legal conclusion that requires neither the admission nor denial of Defendants. Defendants deny all remaining allegations of paragraph 7.

## FACTS COMMON TO ALL COUNTS

### Square D's Business

8. Square D is the North American operating division of Schneider Electric, and is a world leader in the manufacture and distribution of a wide variety of commercial and consumer electrical distribution products and devices. Among Square D's wide product range are circuit breakers, contactors, relays, electric panels, and switches. The SQUARE D trademark – a square circumscribing a square-shaped "D" – is universally recognized throughout the United States as an identifier of quality Square D parts and is registered with the U.S. Patent and Trademark Office (since 1926) under Registration Number 215,776. Attached as Exhibit A is a copy of the certification of the U.S. Patent and Trademark Office website regarding Square D's ownership of the SQUARE D® trademark. The SQUARE D® trademark referenced herein is only one of several federally registered marks owned by Square D as part of its family of SQUARE D® marks. See Exhibit A.

**ANSWER:** Defendants are without knowledge as to the allegations set forth in paragraph 8, therefore, all allegations set forth therein are denied.

9. Schneider Electric is also recognized as a world leader in the manufacture and distribution of a wide variety of commercial and consumer electrical distribution products and

3

devices. Schneider Electric holds several trademarks, including the SCHNEIDER ELECTRIC® trademarks and the TELEMECANIQUE® mark. The SCHNEIDER ELECTRIC® trademarks are universally recognized throughout the United States as an identifier of quality Schneider Electric parts and are registered with the U.S. Patent and Trademark Office (since 2001) under Registration Numbers 2,424,546 and 2,491,767. Attached as Exhibits B & C are copies of the certifications of the U.S. Patent and Trademark Office regarding Schneider Electric's ownership of the Schneider Electric® trademarks. The TELEMECANIQUE® mark is universally recognized throughout the United States as an identifier of quality Schneider Electric parts and are (sic) registered with the U.S. Patent and Trademark Office (since 1976) under Registration Number 1,049,948. Attached as Exhibit D is a copy of the certification of the U.S. Patent and Trademark Office of the TELEMECANIQUE® mark.

**ANSWER:** Defendants are without knowledge as to the allegations set forth in paragraph 9, therefore, all allegations set forth therein are denied.

10. Square D distributes Square D, Telemecanique and Schneider Electric products nationally and internationally through a network of authorized distributors. All of Square D's distributors, including the distributors for the territory encompassing this District and the State of Illinois, sign distributorship agreements. The distributors agree to sell authentic Square D, Telemecanique and Schneider Electric products to customers at competitive prices and to maintain sufficient inventory of Plaintiffs' products to ensure prompt and reliable service to the customer or end-user. Square D's distributorship policies and agreements prohibit authorized distributors from selling Square D's products to unauthorized distributors or wholesalers, such as ESI or Ambros. Square D's distributors may sell only to electrical contractors, industrial accounts, utilities, original equipment manufacturers, or other end-users.

4

**ANSWER:**   Defendants are without knowledge as to the allegations set forth in paragraph 10, therefore, all allegations set forth therein are denied.

11.   Square D's direct sales are generally confined to certain national accounts. All such sales are performed by Square D's employees. Square D does not sell to any unauthorized distributors.

**ANSWER:**   Defendants are without knowledge as to the allegations set forth in paragraph 11, therefore, all allegations set forth therein are denied.

12.   The sale of electrical components is highly competitive among manufacturers and distributors. Because of the similarity in function of many electrical components, consumers have a choice in manufacturer of particular items. The reputation of the manufacturer and its distributors, therefore, is vital to the continued economic success of manufacturers of electrical components. Given the competitive environment, it is crucial for Plaintiffs to maintain their reputation of providing high quality products at competitive prices as well as excellent service and availability of product, both directly and through its distributors.

**ANSWER:**   Defendants are without knowledge as to the allegations set forth in paragraph 12, therefore, all allegations set forth therein are denied.

13.   Among Plaintiff's products are the TELEMECANIQUE LINE of electrical contactors. The TELEMECANIQUE contactors come in varying sizes. A contactor is an electrical relay used to switch a large amount of electrical power through its contacts. Contactors typically have multiple contacts and those contacts are usually (but not always) open, so that power to the load is shut off when the coil is de-energized. The most common industrial use for contactors is the control of electrical motors. Defective and counterfeit contactors can pose serious risks, including property damage, personal injury and destruction of motors controlled by the contactor.

5

**ANSWER:**　Defendants are without knowledge as to the allegations set forth in paragraph 13, therefore, all allegations set forth therein are denied.

**Counterfeit Contactors and Their Threat to Public Safety**

14.　Over the past decade, the counterfeiting of electrical components has increased dramatically. The counterfeit contactors imported and sold by ESI and Ambros bear the TELEMECANIQUE®, SCHNEIDER ELECTRIC® and SQUARE D® trademark symbols and appear to have the same overall configurations of genuine Square D and Schneider Electric products.

**ANSWER:**　Defendants deny all allegations of paragraph 14.

15.　When counterfeit contactors are installed and subjected to an electrical load, their poor interior quality and inauthentic nature can lead to serious consequences. The counterfeit contactors sold by defendants were found to have inferior plastic, plastic moldings, contact material, improper hardware and assembly errors. These defects carry a risk of shortened electrical life, melting and/or jamming causing motor or load to not shut off, and can lead to an electrical breakdown causing short circuit. The defective nature of counterfeit contactors can cause the contactor to overheat, catch fire and/or explode. Anyone near one of the contactors when it explodes could be injured. If the contactor does not explode, it may nonetheless fail to protect or control the apparatus or motor it was installed to protect or control. Because counterfeit electrical parts are a genuine threat to consumer safety and, by extension, threaten the good reputation and value of the SQUARE D® and SCHNEIDER ELECTRIC® marks, Plaintiffs vigorously defend their marks and consumers from the hazards posed by counterfeit parts.

**ANSWER:**　Defendants deny all allegations of paragraph 15.

## ESI And Ambros Misappropriated Plaintiffs' Marks And Used Them To Sell Products

16. ESI and Ambros maintain a website, www.electronicsolutionsinc.com, (the "ESI Website").

**ANSWER:** Defendants admit that they maintain the website www.electronicsolutionsinc.com.

17. ESI and Ambros offer several different types of electrical components on the ESI website, including components ESI and Ambros represent as having been manufactured by Plantiffs.

**ANSWER:** Defendants admit that they list several different types of electrical components on the ESI website, but deny all remaining allegations of paragraph 17.

18. ESI and Ambros display the TELEMECANIQUE®, SQUARE D® and SCHNEIDER ELECTRIC® marks on the ESI Website in specific reference to the products they offer for sale. (A copy of screen shots from the ESI Website are attached as Exhibit E).

**ANSWER:** Paragraph 18 states a legal conclusion that requires neither the admission nor denial of Defendants. Defendants deny all remaining allegations of paragraph 18.

19. ESI and Ambros also offer electrical components for sale via www.ebay.com, (the "Ebay® Website").

**ANSWER:** Defendants admit that they offer electrical components for sale via www.ebay.com.

20. ESI and Ambros offer components for sale on the Ebay Website that defendants represent as manufactured by Plaintiffs.

**ANSWER:** Defendants admit that they previously offered for sale on the Ebay Website products manufactured by Plaintiffs but deny that they continue to offer Plaintiffs' products for sale on the Ebay Website, and deny all remaining allegations of paragraph 20.

7

21. Defendants utilize the TELEMECANIQUE®, SQUARE D® and SCHNEIDER ELECTRIC® marks on the Ebay Website in conjunction with their efforts to sell electrical components. (Copies of screen shots from the Ebay Website showing Defendants' use of the marks is attached as Exhibit F).

**ANSWER:** Paragraph 21 states a legal conclusion that requires neither the admission nor denial of Defendants. Defendants deny all remaining allegations of paragraph 21.

22. Neither ESI nor Ambros has ever obtained permission to use the TELEMECANIQUE®, SQUARE D® and SCHNEIDER ELECTRIC® marks for any purpose.

**ANSWER:** Defendants deny all allegations of paragraph 22.

**ESI Sells Counterfeit Square D and Schneider Electric Parts**

23. Neither ESI nor Ambros has an affiliation with either Square D or Schneider Electric, and neither are (sic) authorized to sell any of Square D or Schneider Electric's products.

**ANSWER:** Defendants deny all allegations of paragraph 23.

24. On information and belief, during the past several months, ESI and Ambros have sold hundreds of counterfeit Square D, Telemecanique and Schneider Electric parts. Among other sales, ESI and Ambros sold approximately five electrical contactors, all of which were represented to be authentic. Inspection of these contactors confirmed that two of the five were counterfeit. In this manner defendants co-mingled the counterfeit contactors with outdated, authentic contactors to disguise the counterfeit ones.

**ANSWER:** Defendants deny all allegations of paragraph 24.

25. Specifically, on July 11, 2007, ESI and Ambros sold five (5) electrical contactors bearing the TELEMECANIQUE®, SQUARE D® and SCHNEIDER ELECTRIC® marks to Tsutomu Shimomura. (Copies of the invoice and related documents for the sale are attached as Exhibit G).

8

**ANSWER:**   Defendants admit the allegations of paragraph 25.

26.   Suspecting the contactors were not authentic, Mr. Shimomura shipped them to Square D on July 19, 2007.

**ANSWER:**   Defendants are without knowledge as to the allegations set forth in paragraph 26, therefore, all allegations set forth therein are denied.

27.   Square D inspected the contactors and discovered that two (2) of the (5) contactors were counterfeit. (A copy of the report of Mr. Jeff Miller, Senior Engineer at Square D, is attached hereto as Exhibit H).

**ANSWER:**   Defendants are without knowledge as to the allegations set forth in paragraph 27, therefore, all allegations set forth therein are denied.

28.   At all relevant times, ESI and Ambros intentionally and deliberately sold counterfeit Square D, Telemecanique and Schneider Electric parts, and knew or should have known that the parts they purchased and sold were counterfeit. ESI and Ambros knew they were not an authorized distributor of Square D, Telemecanique or Schneider Electric products and did not lawfully purchase the parts from Square D or one of its authorized distributors.

**ANSWER:**   Defendants deny all allegations of paragraph 28. Defendants further answer that they are authorized to sell, offer for sale and advertise Plaintiffs' parts under the "First Sale" doctrine.

29.   Notwithstanding this knowledge, ESI and Ambros marketed and represented to customers and potential customers that the products were authentic Square D, Telemecanique and Schneider Electric products. Neither ESI nor Ambros ever informed customers or potential customers that, in fact, they stocked and sold counterfeit Square D and Schneider Electric products.

**ANSWER:**   Defendants deny all allegations of paragraph 29.

30. Based upon ESI and Ambros's sale of counterfeit Square D and Schneider Electric products, Plaintiffs have suffered irreparable harm to their reputation and goodwill. Moreover, an innocent consumer present when a counterfeit product fails to work correctly may suffer devastating property damage or the ultimate irreparable harm, personal injury, or death. Plaintiffs have also lost profits that they would have earned through the sale of authentic products through an authorized distributor but for ESI's unlawful distribution of counterfeit products.

**ANSWER:** Defendants deny all allegations of paragraph 30.

## COUNT I

### Sale of Counterfeit Goods in Violation of the Lanham Act/Trade Dress
### 15 U.S.C. §§ 1114 and 1125 (a)(1)

### (All Defendants)

31. Plaintiffs incorporate the preceding allegations as if fully restated herein.

**ANSWER:** Defendants reassert and incorporate their responses to paragraphs 1 though 30 above as if fully set forth herein.

32. Section 1114(1) of the Lanham Act states:

(1) Any person who shall, without the consent of the registrant –

   (a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

   (b) reproduce, counterfeit, copy or colorably imitate a registered mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

   shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

10

**ANSWER:** Defendants admit that paragraph 32 sets forth Section 1114(1) of the Lanham Act.

33. Section 1125(a)(1)(A) of the Lanham Act provides, in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any work, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of facts, which --
>
> (A) is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

**ANSWER:** Defendants admit that paragraph 33 sets forth a portion of Section 1125(a)(1)(A) of the Lanham Act.

34. The SQUARE D® mark, and TELEMECANIQUE® mark are registered trademarks owned by Square D and Schneider Electric, respectively.

**ANSWER:** Defendants are without knowledge as to the allegations set forth in paragraph 34, therefore, all allegations set forth therein are denied.

35. Square D marks its products with the SQUARE D® trademark. Likewise, Schneider Electric marks its products with the SCHNEIDER ELECTRIC® and TELEMECANIQUE® marks. By virtue of these marks, Square D and Schneider Electric products have a distinctive trade dress. In addition, Plaintiffs' products have a distinct physical appearance and configuration.

**ANSWER:** Defendants are without knowledge as to the allegations set forth in paragraph 35, therefore, all allegations set forth therein are denied.

11

36. Products marked with SQUARE D®, SCHNEIDER ELECTRIC® and TELEMECANIQUE® marks are readily identified as Square D and Schneider Electric products, respectively. Because the average consumer would not be able to identify an authentic Square D product from a counterfeit product absent the mark, the presence of the SQUARE D® mark on a product would likely cause consumers to believe that products bearing the marks are authentic when they are, in fact, counterfeit. Likewise, the average consumer would not be able to identify an authentic Schneider Electric product from a counterfeit one absent the SCHNEIDER ELECTRIC® and TELEMECANIQUE® marks. The presence of the marks on products would likely cause consumers to believe that products bearing those marks are authentic.

**ANSWER:** Defendants deny all allegations of paragraph 36.

37. ESI and Ambros sold and continue to offer for sale counterfeit Square D and Schneider Electric products in interstate commerce.

**ANSWER:** Defendants deny all allegations of paragraph 37.

38. Square D at no time consented to ESI and Ambros's use of Square D's trademarks or trade dress for any purpose, including the advertising of any Square D products, whether authentic or counterfeit.

**ANSWER:** Defendants deny all allegations of paragraph 38.

39. As a result of ESI and Ambros's unlawful marketing and sale of counterfeit goods, Plaintiffs have suffered injury to its (sic) reputation and goodwill. In addition, Plaintiffs have suffered injury in the form of lost sales in an amount yet to be determined.

**ANSWER:** Defendants deny all allegations of paragraph 39.

40. Unless ESI and Ambros are restrained from further use of Square D and Schneider Electric marks, Plaintiffs will suffer irreparable harm to their reputation and goodwill

and will continue to suffer lost sales. Further, consumers may suffer personal or other injuries unless ESI and Ambros are restrained from selling counterfeit goods.

**ANSWER:** Defendants deny all allegations of paragraph 40.

41. ESI and Ambros's sale of counterfeit goods presents an exceptional case. ESI and Ambros knew, or reasonably should have known, that the electrical products they sold and marketed were not authentic products. In particular, ESI and Ambros knew they were not authorized Square D or Schneider Electric distributors and knew that they did not purchase the contactors through an authorized distributor. ESI and Ambros's sale of contactors was purposeful and knowing and merits a finding that exceptional circumstances exist sufficient to support an award of attorneys' fees and enhanced damages.

**ANSWER:** Defendants deny all allegations of paragraph 41.

## COUNT II

### Unfair Competition
### 15 U.S.C. § 1125(a)

### (All Defendants)

42. Plaintiffs incorporate the preceding allegations as if fully restated herein.

**ANSWER:** Defendants reassert and incorporate their responses to paragraphs 1 through 41 above as if fully set forth herein.

43. In addition to their unauthorized use of Plaintiffs' Marks, defendants have misappropriated and used Plaintiffs' advertising materials, catalogs and descriptive materials of Plaintiffs' products.

**ANSWER:** Defendants deny all allegations of paragraph 43.

44. Defendants' unauthorized use of the TELEMECANIQUE®, SCHNEIDER ELECTRIC® and SQUARE D® Marks, as well as Plaintiffs' catalogs and product information,

creates a false impression of affiliation and authorization in violation of Section 43(a) of the Lanham Act.

**ANSWER:**   Defendants deny all allegations of paragraph 44.

45.   There is a likelihood the public will be confused by Defendants' unauthorized use of plaintiffs' advertising materials and marks.

**ANSWER:**   Defendants deny all allegations of paragraph 45.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs' Complaint, and each purported cause of action alleged therein, fails to state a claim against Defendants upon which relief can be granted.

### Second Affirmative Defense

Each purported cause of action alleged by Plaintiffs in the Complaint and relief requested therein is barred by the doctrine of fair or nominative use.

### Third Affirmative Defense

Each purported cause of action alleged by Plaintiffs in the Complaint and the relief requested therein is barred by the doctrine of unclean hands.

### Fourth Affirmative Defense

Each purported cause of action alleged by Plaintiffs in the Complaint and the relief requested therein is barred by the doctrines of laches, estoppels, acquiescence and/or waiver.

### Fifth Affirmative Defense

Plaintiffs' Complaint does not set forth any facts that would entitle Plaintiffs to recover general, compensatory, and/or punitive damages (including attorneys' fees and costs) against Defendants.

### Sixth Affirmative Defense

Plaintiffs' claims are barred in whole or in part by Defendants' good faith actions.

### Seventh Affirmative Defense

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

### Eighth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the failure of Plaintiffs to mitigate their damages.

### Ninth Affirmative Defense

Plaintiffs' claims are barred by a lack of standing to sue.

### Tenth Affirmative Defense

Plaintiffs' claims are barred by the doctrines of license both express and implied.

### Eleventh Affirmative Defense

Plaintiffs' claims are barred by their attempts to misuse any purported trademark or copyright ownership by extending it beyond any recognizable and lawful limited monopoly.

### Twelfth Affirmative Defense

Plaintiffs' claims are barred by the doctrine of first sale.

### Thirteenth Affirmative Defense

Defendants are not liable for the actions of their employer or other third parties under the doctrines of *respondeat superior* and no injury.

### Fourteenth Affirmative Defense

Defendants reserve the right to assert additional affirmative defenses in the event that they determine any additional affirmative defenses would be warranted.

## PRAYER FOR RELIEF

WHEREFORE, having fully answered Plaintiffs' Complaint, Defendants pray that:

(a) Judgment be rendered in favor of Defendants dismissing Plaintiffs' Complaint with prejudice with costs cast against the Plaintiffs;

(b) This action be tried before a jury on all issues so triable;

(c) That Defendants be awarded their attorneys' fees and applicable costs pursuant to all applicable state and federal laws permitting same, including the "exceptional case" doctrine of 15 U.S.C. § 1117(a), and pursuant to 17 U.S.C. § 505;

(d) Defendants be awarded such other and further relief as this Court deems just and proper.

Respectfully submitted, this 3rd day of July, 2008.

John T. Williams
Laura S. McKay
Jason Nash
Hinkhouse Williams Walsh LLP
180 N. Stetson St., Suite 3400
Chicago, IL  60601
312 784 5400
312 784 5499 (Fax)
jwilliams@hww-law.com
lmckay@hww-law.com
jnash@hww-law.com

## CERTIFICATE OF SERVICE

Laura S. McKay, an attorney, hereby certifies that she caused a true and correct copy of the foregoing Appearances, Rule 7.1 Disclosure Statement Form, and Answer and Affirmative Defenses of Defendants Electronic Solutions, Inc. and William Ambros to be served via email and U.S. mail this 3rd day of July, 2008 on all counsel of record.

*/s/ L. A. McKay*